**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**DONALD P. ROSENDALE,**

**Plaintiff,**

**- against -**

**MICHAEL MAHONEY,** *individually and in his*
*official capacity as superintendent*, **THE**
**MILLBROOK SCHOOL DISTRICT, and THE**
**OFFICE OF SCHOOL PERSONNEL REVIEW AND**
**ACCOUNTABILITY OF THE STATE EDUCATION**
**DEPARTMENT,**

**Defendants.**

**05 Civ. 01966 (CLB)(LMS)**

**REPORT AND**
**RECOMMENDATION**

**TO: THE HONORABLE CHARLES L. BRIEANT, U.S. DISTRICT JUDGE**

Pro Se Plaintiff Donald P. Rosendale ("Plaintiff") brings the instant civil action against

the Defendant Millbrook School District ("the School District"), Defendant Michael Mahoney,

individually and in his official capacity as superintendent of the School District ("Mahoney")

(collectively, "Defendants"), and the Office of School Personnel Review and Accountability of

the State Education Department ("OSPRA").[1]  Plaintiff claims, inter alia, that Defendants

violated his civil rights under federal and state law in connection with the termination of his

position as a substitute teacher for the School District.  Before the Court is Defendants' motion

for summary judgment and Plaintiff's cross-motion for partial summary judgment.

**I.     BACKGROUND**

---

[1]Plaintiff named OSPRA as a Defendant for the first time in the Second Amended
Complaint.  See Docket # 33.  However, Your Honor dismissed the Second Amended Complaint
as to OSPRA without prejudice in the October 2, 2006, Memorandum and Order.  See October 2,
2006, Memorandum and Order at page 4.

## A. <u>Procedural History</u>

This is the fourth Report and Recommendation prepared by the undersigned in this case, and I presume that Your Honor is fully familiar with the procedural history of this case, as set forth therein. <u>See</u> Complaint, Docket # 2; First Amended Complaint, Docket # 11; Report and Recommendation, Docket # 23; Second Amended Complaint, Docket # 33; Report and Recommendation, Docket # 43; Answer to Second Amended Complaint, Docket # 53; Report and Recommendation, Docket # 63. As a result of the motion practice in this case, only the First and Third Causes of Action in the Second Amended Complaint–Plaintiff's procedural due process claim and his First Amendment retaliation claim–remain and are the subject of Defendants' motion for summary judgment. Plaintiff has cross-moved for partial summary judgment only as to his procedural due process claim.

Defendants filed the instant motion for summary judgment on December 11, 2007. Docket # 74-76. Plaintiff filed his cross-motion for partial summary judgment on December 12, 2007. Docket # 77-79, 91. Defendants filed an opposition to Plaintiff's cross-motion on January 11, 2008. Docket # 80-82. On January 23, 2008, Plaintiff filed an opposition to Defendants' motion for summary judgment, and Defendants submitted a reply also on January 23, 2008. Docket # 83-87. Plaintiff filed a reply to Defendants' opposition on January 24, 2008. Docket #89.

## B. <u>Summary of the Relevant Facts</u>[2]

---

[2]The facts set forth in this section are taken from: (1) the Second Amended Complaint, (2) the Answer, (3) Defendants' Memorandum in Support of their Motion for Summary Judgment ("Defendants' Memorandum in Support") and the accompanying 56.1 Statement

I also presume that Your Honor is fully familiar with the facts in this case. However, for the purposes of this Report and Recommendation, a brief summary of the relevant facts will be set forth.

In January 2003, Plaintiff received a letter dated January 2, 2003, from Mahoney, the School District's Superintendent of Schools. Defendants' 56.1 Statement at ¶ 2; Plaintiff's 56.1 Reply at ¶ 2. The letter stated that Plaintiff had been "approved to substitute as a teacher within the Millbrook Central School District." Defendants' Exhibit C. The letter further stated that Plaintiff would "receive $60.00 per day for substituting as a teacher for the first ten days of service and $70.00 for each day of substituting as a teacher after the initial ten days, for the remainder of the 2002-2003 school year." Id. Additionally, the letter instructed Plaintiff to register for the Substitute Calling Service because "[t]he District uses the services of DC BOCES Sub Calling Service to schedule substitutes when they are needed." Id. The letter also instructed Plaintiff to go to the School District's Business Office to fill out paperwork for payroll. Id. Plaintiff thereafter was called to substitute teach for the School District. See generally Rosendale Deposition.

---

("Defendants' 56.1 Statement"), (4) Plaintiff's Opposition to Defendants' Motion Summary Judgment ("Plaintiff's Opposition") and the accompanying 56.1 Reply Statement ("Plaintiff's 56.1 Reply"), (5) Defendants' Reply Memorandum ("Defendants' Reply Memorandum"), (6) Plaintiff's Memorandum in Support of his Cross-Motion for Summary Judgment ("Plaintiff's Memorandum in Support") and the accompanying 56.1 Statement ("Plaintiff's 56.1 Statement"), (7) Defendants' Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment ("Defendants' Opposition"), (8) Plaintiff's Reply Memorandum ("Plaintiff's Reply Memorandum"), and (9) the evidence submitted by the parties in support of their submissions, including deposition testimony. The facts contained in this section are uncontested, unless otherwise noted, and for the purposes of Defendants' motion for summary judgment against Plaintiff, are construed in the light most favorable to Plaintiff; for the purposes of Plaintiff's cross-motion for partial summary judgment, the facts are viewed in the light most favorable to Defendants.

By letter dated June 25, 2003, Mahoney advised Plaintiff that he would be retained on the substitute list for the 2003-2004 school year.  Defendants' 56.1 Statement at ¶ 11; Plaintiff's 56.1 Reply at ¶ 11; Defendants' Exhibit D.  The letter stated:

> It is intended that your services will be performed in substantially the same manner next year as this past year, and also on substantially the same terms and conditions of employment as in this past year.
> Please understand that your name will automatically be removed from the Millbrook Central School District Substitute List or from a specific location for the following reason(s): tardiness, accepting a position and then canceling, consistent unavailability when called, repeated refusal of assignments, consistent no answers when called and not returning this completed form prior to the due date.

Defendants' Exhibit D.

The letter further instructed Plaintiff to "sign and return one copy to the secretary to the superintendent."  Id.  Plaintiff checked the line on the letter indicating that he would be available to substitute beginning September 2003, and signed and dated the letter.  Id.  Plaintiff was called to substitute teach during the School District during the 200-2004 school year.  See generally Rosendale Deposition.

Plaintiff received another letter, dated June 9, 2004, advising him that he would be retained on the substitute list for the 2004-2005 school year.  Defendants' 56.1 Statement at ¶ 14; Plaintiff's 56.1 Reply at ¶ 14; Defendants' Exhibit E.  The content of the letter was substantially the same as the June 25, 2003, letter.  See Defendants' Exhibits D and E.  Plaintiff indicated that he would be available beginning September 2004, and signed and dated this letter as well. Defendants' Exhibit E.

Defendants allege that on or about August 30, 2004, Mahoney received a letter dated August 25, 2004, from the State Education Department, advising him that Plaintiff had been

arrested on August 13, 2004.  Defendants' 56.1 Statement at ¶ 21; Defendants' Exhibit F.  The

letter did not advise Mahoney of the reason for the arrest.  Id.  Mahoney subsequently instructed

the District Clerk/ Superintendent's Secretary, Tonya Pulver ("Pulver"), to notify the BOCES

Sub Calling Service that the District wanted Plaintiff's name removed from the substitute list.

Defendants' 56.1 Statement at ¶ 22; Plaintiff's 56.1 Reply at ¶ 22.  According to Defendants,

Pulver notified the BOCES Sub Calling Service by fax transmission on August 30, 2004.

Defendants' 56.1 Statement at ¶ 23; Pulver Affidavit, Exhibit A.  Plaintiff was not provided with

notice of Mahoney's decision or offered a chance to explain the arrest prior to the removal of his

name from the substitute list.  Plaintiff's 56.1 Statement at ¶ 5.

At some point during 2003 to 2005, the District was notified that another teacher had

been arrested.  Id. at ¶ 7; Defendants' 56.1 Reply at ¶ 7.  According to Defendants, this teacher

was a probationary teacher, not a per diem substitute teacher.  Defendants' 56.1 Reply at ¶ 7.

Mahoney met with the teacher after he received the notification and also discussed the teacher's

continued employment with the Board of Education.  Plaintiff's 56.1 Statement at ¶ 8;

Defendants' 56.1 Reply at ¶ 8.

Plaintiff is not certified to teach in New York or in any other state.  Defendants' 56.1

Statement at ¶ 7; Plaintiff's Reply at ¶ 7.  Thus, under New York State regulations, the School

District could call Plaintiff to teach anywhere from zero days to forty days per school year

during the years that Plaintiff remained on the substitute list as a per diem substitute.  Id.

Defendants point out that the letters sent to Plaintiff did not contain any guarantee the Plaintiff

would be called to work as a substitute and maintain that it is possible for someone to be

approved to be listed on the substitute list, but be called zero times during the school year.

Defendants' 56.1 Statement at 3. In response, Plaintiff states that he had worked "close to the maximum number of days permitted" in the two school years prior to his removal from the substitute list. Plaintiff's 56.1 Reply at ¶ 6. Plaintiff also alleges that Mahoney, the prior high school principal, and Ms. Tobin, a school secretary that gave Plaintiff his teaching assignments, made oral representations to Plaintiff that guaranteed his continued employment as a substitute teacher. Plaintiff's 56.1 Reply at ¶ 10.

Mahoney alleges that he directed Plaintiff's name to be removed from the list because he believed that Plaintiff's failure to notify Mahoney of the arrest called into question Plaintiff's level of responsibility. Defendants' 56.1 Statement at ¶ 2; Mahoney Affidavit at ¶ 15. Plaintiff claims Mahoney was motivated by a lawsuit Plaintiff filed against the Town of Amenia ("*Rosendale 1*") on August 18, 2003. Second Amended Complaint at ¶ 53. In October 2004, a school nurse employed by the District was served with a subpoena duces tecum in *Rosendale 1*. Defendants' 56.1 Statement at ¶ 24; Plaintiff's 56.1 Reply at ¶ 24. Defendants claim that neither Mahoney nor the District had any knowledge of the suit until after Mahoney had directed that Plaintiff's name be removed from the substitute list. Defendants' 56.1 Statement at ¶ 25.

## II.    DISCUSSION

### A.    <u>The Standard for Dismissal Pursuant to Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure</u>

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 320-23 (1986).

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules
> of Civil Procedure, there shall be annexed to the notice of motion a separate, short
> and concise statement, in numbered paragraphs, of the material facts as to which
> the moving party contends there is no genuine issue to be tried. Failure to submit
> such a statement may constitute grounds for denial of the motion.

Local Civ. R. 56.1(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 250. The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. Id.

Where a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56. Under Local Rule 56.1(b), the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried. Local Civ. R. 56.1(b). Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original). "The nonmoving party must have 'had the opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." Trebor Sportswear

Co. v. Ltd. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) (quoting Anderson, 477 U.S. at 250 n.5). Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. of New York v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

## B.    Defendants' Motion for Summary Judgment

Defendants make the following arguments in support of their motion for summary judgment: (1) the Court lacks personal jurisdiction over Defendant Mahoney because Plaintiff failed to properly serve Mahoney, (2) Mahoney is entitled to qualified immunity on both of Plaintiff's remaining claims, (3) Plaintiff has failed to establish a genuine issue of material fact with regard to his procedural due process claim against both Defendants, and (4) Plaintiff has failed to establish a genuine issue of material fact with regard to his First Amendment retaliation claim against both Defendants. Defendants' Memorandum in Support at Points I-III. Plaintiff argues that Defendants have forfeited any objection they may have had regarding improper service by failing to assert such a defense in the two prior motions to dismiss made by Defendants earlier in this litigation. Plaintiff's Memorandum in Opposition at pages 2-11. Plaintiff also argues that he has established a genuine issue of material fact with regard to his claim of First Amendment retaliation against all Defendants, id. at pages 11-23, and that he is

entitled to judgment as a matter of law on his procedural due process claim. See generally Plaintiff's Memorandum in Support.

As an initial matter, I conclude, and respectfully recommend that Your Honor should conclude, that Defendants' first argument is without merit. As Plaintiff correctly points out, "[a] delay in challenging personal jurisdiction [can] result[] in waiver, even where . . . the defense was asserted in a timely answer." Datskow v. Teledyne, Inc., Continental Prods. Div., 899 F.2d 1298, 1303 (2d Cir. 1990) (finding that the defendant waived its right to object to improper service by waiting four months after serving the answer to raise the issue). "Although the passage of time alone is generally not sufficient to indicate forfeiture of a procedural right, the time period provides the context in which to assess the significance of the defendant's conduct, both the litigation activity that occurred and the opportunities to litigate the jurisdictional issue that were forgone." Hamilton v. Atlas Turner, 197 F.3d 58, 61 (2d Cir. 1999) (citations omitted). In Hamilton, for example, the Second Circuit concluded that the defendant had forfeited its right to object to personal jurisdiction. Id. at 62. In reaching this conclusion, the court noted that there had been "[c]onsiderable pretrial activity" in the case and that the defendant had had "four distinct opportunities to move to dismiss during the four-year interval" between the time when the defendant filed the answer and when it raised the issue of personal jurisdiction. Id. at 61.

Here, Plaintiff filed the original Complaint on February 9, 2005. Docket # 2. Defendants chose to make a motion to dismiss in lieu of an Answer on March 23, 2005. Docket # 6-9. Defendants did not raise the issue of improper service in the motion. See Defendants' Memorandum in Support, Docket # 7-8. Plaintiff filed an Amended Complaint on April 19, 2005, and a Second Amended Complaint on June 21, 2006. Docket # 11, 33. Again, Defendants

chose to make a motion to dismiss in lieu of answering the Second Amended Complaint (Docket # 34-35) and again, Defendants did not object to service in the motion. <u>See</u> Defendants' Memorandum in Support, Docket # 35. After Defendants' second motion to dismiss was granted in part and denied in part, Defendants answered the Second Amended Complaint. Docket # 53. Although Defendants asserted the affirmative defense that the Court lacked personal jurisdiction in the Answer to the Second Amended Complaint, Defendants waited over a year to object to the service of the original Complaint in the instant motion for summary judgment. During the time between filing the Answer and filing the instant motion, the parties had numerous conferences with the undersigned and completed discovery in the case and yet the issue of improper service on Mahoney was never raised. I conclude, and respectfully recommend that Your Honor should conclude, that such a lengthy delay in raising the issue of improper service and the "considerable pretrial activity" that has taken place in this case warrants a finding that Defendants have forfeited their right to object to improper service.

### 1. ***Plaintiff's Procedural Due Process Claim***

Plaintiff claims that he was denied procedural due process when his name was removed from the substitute list without notice and a hearing. Second Amended Complaint at ¶ 48. Defendants argue that Plaintiff had no statutory or contractual right to his employment and therefore was not entitled to notice and a hearing because he had no property interest in his continuation on the list. Defendants' Memorandum in Support at Point III. Defendants also argue that Mahoney is entitled to qualified immunity on Plaintiff's procedural due process claim.

Id. [3]

In order to successfully establish a due process claim, a plaintiff must show that he or she was deprived of a protected property or liberty interest.  White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1061-62 (2d Cir. 1993) (citations omitted).  In order to have a protected property interest in a benefit, "a person clearly must have more than an abstract need or desire for it.  He [or she] must have more than a unilateral expectation of it.  He [or she] must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  In the context of employment, "there appears to be general agreement that a property interest arises only when an individual possesses a 'legitimate claim of entitlement' to continued job tenure."  Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 447 (2d Cir. 1980) (citing Roth, 408 U.S. at 577).  Property interests are not created by the Constitution.  Id. Rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Roth, 408 U.S. at 577. However, "[w]hile state law defines the underlying interest, 'federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause.' "  Ezekwo v. New York City Health & Hosps. Corp., 940 F.2d 775,

---

[3] Additionally, Defendants argue that Plaintiff "can establish no due process claim . . . because he was at all times in possession of a meaningful post-deprivation remedy under Article 78 of the New York CPLR . . . ."  Defendants' Memorandum in Support at page **.  The undersigned addressed this argument in the August 28, 2006, Report and Recommendation (see August 28, 2006, Report and Recommendation at pages 9-10), and Your Honor agreed with my analysis in the subsequent October 2, 2006, Memorandum and Order.  See October 2, 2006, Memorandum and Order at pages 4-5.  Accordingly, I find no need to address the argument in the instant Report and Recommendation.

782 (2d Cir. 1991).

Indeed, in declining to dismiss Plaintiff's procedural due process claim after Defendants' first motion to dismiss, Your Honor pointed out that Plaintiff had not submitted a copy of his contract and stated that "[o]nly by developing further information can it be determined whether the Plaintiff had a sufficient expectation under his agreement that he would be continued on the roster of substitutes . . . ."  March 10, 2006, Memorandum and Order at page 5.  Your Honor further stated that

> [t]he State of New York Regulations and caselaw having to do with the response of school district officials to arrests and convictions of non-tenured employees will at least be a starting point to determine what due process, if any, Plaintiff was entitled to receive.  This Court agrees that Plaintiff has no tenure, but an ongoing contractual relationship with the expectation of renewal viewed against a background of local customs and practices could give rise to a property interest sufficient to support a due process claim.

Id.

Plaintiff argues that New York Corrections Law §§ 752-754 support his claim of entitlement to his employment.  Plaintiff's Opposition at pages 15-19.  I concluded in my initial Report & Recommendation that neither the New York Corrections Law nor the applicable provisions of the Regulations of the Commissioner of Education provide Plaintiff with a legitimate claim of entitlement to his continuation on the substitute list, because such provisions apply only to prospective school employees and applicants for licenses or employment, not to those already employed by the State.  See January 20, 2006, Report and Recommendation at pages 21-22;  see also N.Y. Correct. Law §§ 752, 753; N.Y.Comp. Codes R. & Regs. tit. 8, § 87.5.  However, New York courts have held that the public policy underlying Corrections Law §§ 752 and 753 prohibiting discrimination against applicants with a criminal record also

prohibits discrimination in terminating employment based on arrests and convictions.  Givens v. New York City Housing Auth., 249 A.D.2d 133 (1st Dept. 1998) (holding that the same public policy that prohibits discrimination in hiring on the basis of a criminal record also prohibits discrimination in terminating employment on the basis of criminal record); Okoro v. City of New York Human Res. Admin., 219 A.D.2d 506 (1st Dept. 1995) (holding that no hearing under Corrections law § 752 was required for terminated petitioner because the evidence in record supported the conclusion that the petitioner was terminated because of his unreliability and not because of his prior conviction); but see Pisano v. McKenna, 466 N.Y.S.2d 231 (Sup. Ct. 1983) (holding that Corrections Law § 752 only applies to the application for a licence or employment by a person previously convicted of a crime and has no bearing on the termination of a fireman for convictions unrelated to his position).

Additionally, Plaintiff claims that the three letters he received from the School District establish as a matter of law that he had an ongoing contractual relationship with Defendants.  See generally Plaintiff's Memorandum in Support.  As Your Honor previously pointed out, an ongoing contractual relationship can, in some cases, provide a plaintiff with a property interest in a continued benefit.  S&D Maint. Co. v. Goldin, 844 F.2d 962, 965-66 (2d Cir. 1988).  "In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause."  Id. at 967.  Indeed, in New York, the employment of substitute teachers "is strictly on a contractual basis and [their] rights, including the right of tenure and the right of compensation, depend entirely on whatever contract, express or implied, [each] may have with the Board of Education." Warner v. Bd. of Educ., 14 A.D.2d 300, 302 (1st Dept. 1961), aff'd, 12 N.Y.2d 924 (1963).

Defendants argue that the letters sent to Plaintiff were not contracts because the form letters that Plaintiff received are the same letters that every per diem substitute teacher receives for each school year and they contain no promise of employment.  Defendants' Memorandum at page 4, 12; Defendants' Memorandum in Opposition at pages 4-5.[4]  Under New York law, the requirements for the formation of a contract are: (1) at least two parties with legal capacity to contract, (2) a meeting of the minds as to the terms and conditions of the contract, and (3) consideration.  See generally 22 N.Y. Jur. 2d Contracts §§ 11, 13.  The parties do not dispute that Mahoney and Plaintiff had legal capacity to contract.  With regard to the second requirement of contract formation, the intent of the parties is determined by considering the relationship of the parties, their words and actions, and all of the surrounding circumstances.  Lehrer McGovern Bovis, Inc. v. New York Yankees, 207 A.D.2d 256, 259 (1st Dept. 1994).  While the issue of whether the words and actions of the parties are sufficient to manifest a meeting of the minds is a question for the court to decide, the question of whether the parties meant to be bound is a question of fact for the jury to decide.  See Robinson v. Sweeny, 301 A.D.2d 815 (3d Dept. 2003); Lehrer, 207 A.D.2d at 259.  Viewing the words of the letters and the actions of the School District in a light most favorable to Plaintiff, as the Court must do for the purposes of

---

[4] Defendant also argues that under New York Education Law §§ 1709(16) and 1804, only the Board of Education may offer contracts to teachers and therefore, Mahoney had no authority to offer Plaintiff employment through the letters.  Defendants' Memorandum in Opposition at page 5.  I conclude, and respectfully recommend that Your Honor should conclude, that these provisions cited by Defendants merely grant the Board of Education the authority to extend contracts to "qualified teachers" and do not explicitly state that the superintendent of schools is prohibited from offering employment to substitute teachers.  See N.Y. Educ. Law §§ 1709(16), 1804.  Moreover, Defendants have not provided, and the Court cannot find, any case law indicating that a superintendent of schools is prohibited from offering employment to substitute teachers.  Defendants are invited to offer further support for this argument in their objections to the Report and Recommendation.

Defendants' motion for summary judgment, I conclude, and respectfully recommend that Your Honor should conclude, that Defendants' words and actions manifested an intent to enter into a contract for Plaintiff's employment as a substitute teacher for the school years specified in the letters. Specifically, the second and third letters state that Plaintiff will be retained on the active substitute list, and that "it is intended that [his] service will be performed in substantially that same manner next year as in [the] past year . . . on substantially the same terms and conditions of employment as in [the] past year." Defendants Exhibits D and E. The first letter invited Plaintiff to respond by registering for the BOCES Sub Calling Service, and the second and third letter instructed Plaintiff to sign and return the letter indicating that he would be available to substitute in the coming school year. Defendants Exhibits C-E. Additionally, Plaintiff asserts that he was orally assured continued employment as a substitute teacher by school employees. Plaintiff's 56.1 Reply at ¶ 10; Plaintiff's Affidavit at ¶ 16 and page 24; Rosendale Deposition at page 36 and 68-70. However, given the non-tenured status of substitute teachers, the fact that the letters were form letters sent to all substitute teachers, and the fact that the letters do not guarantee any minimum number of days of substitute teaching, I conclude, and respectfully recommend that Your Honor should conclude, that there is a question of fact for the jury with regard to whether the School District meant to be bound by the letters to employing Plaintiff for the school years specified in the letters.

New York law interprets the requirement of consideration broadly.

Far from consideration needing to be coextensive or even proportionate, the value or measurability of the thing forborne or promised is not crucial so long as it is acceptable to the promisee. Thus, courts have not hesitated to find sufficient consideration not only in what is not the proverbial peppercorn, but in a horse or a canary, or a tomtit if the promisee chose.

Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 464 (1982) (citations omitted).  "It is enough that something is promised, done, forborne or suffered by the party to whom the promise is made as consideration for the promise made to him [or her]."  Hamer v. Sidway, 124 N.Y. 538 (1891).  Whether the benefit given or the detriment suffered is legally sufficient to constitute consideration is a question of law; however, the issue of whether the claimed benefit was actually given or the claimed detriment was actually suffered is a question of fact for the jury.  See Kastil v. Carro, 145 A.D.2d 388 (1st Dept. 1988).  In addition, the fact that the alleged consideration is not identified in the written contract as being the consideration "does not prevent the plaintiff from showing by parol evidence that [the alleged consideration] was the actual consideration."  Loengard v. Metal & Thermit Corp., 204 F. Supp. 74, 76 (S.D.N.Y. 1962) (citing Fain v. Irvington Knitting Mills, 6 Misc.2d 462 (City Ct. N.Y. 1957); 4 Williston on Contracts § 570 (3d ed. 1961)).

Here, Plaintiff claims that there was adequate consideration because he relied to his detriment on the School District's promise to retain him on the substitute list for each school year by promising to be available and by foregoing other employment.  Plaintiff's Memorandum in Support at pages 13-14.  In support of this claim, Plaintiff submits his affidavit in which he states that he decided not to pursue a position as an editor of a local weekly newspaper because he believed he "had a teaching job for the ensuing months."  Plaintiff's Affidavit in Support at ¶ 27.  Additionally, in Plaintiff's deposition, Plaintiff states that he interpreted the language in the second and third letters regarding automatic termination based on unavailability to mean that he "couldn't make conflicting–heavy duty conflicting commitment" and that it limited "his ability to do anything else" and that he "held [his] dates open" for the School District prior to his

termination.  Rosendale Deposition at pages 45-48.  I conclude, and respectfully recommend that Your Honor should conclude, that such evidence is sufficient to raise a genuine issue of material fact as to the third requirement of contract formation.  See, e.g., Weiner, 57 N.Y.2d at 465 (finding that there was evidence of a contract and a breach to sustain a cause of action in part because the plaintiff had rejected other offers of employment in reliance on the employer's assurance that he would not be terminated without cause.)  More specifically, I conclude, and respectfully recommend that Your Honor should conclude, that, if the jury finds that Plaintiff actually made himself available to the School District by foregoing other employment in reliance on the letters, then Plaintiff conferred a benefit on the District and suffered a detriment in consideration for the District's promise of employment as a substitute teacher sufficient to satisfy the third requirement of contract formation.

Defendants also argue that even if the letters sent to Plaintiff are considered enforceable contracts for employment, such employment was "at-will" and therefore terminable by Defendants at any time and for any reason.  Defendants' Memorandum in Support at pages 11-14; Defendants' Reply at pages 5-6.  " 'It is . . .settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.' "  Arledge v. Stratmar Sys., Inc., 948 F.2d 845, 847-48 (2d Cir. 1991) (quoting Sabetay v. Sterling Drug Inc., 69 N.Y.2d 329, 333 (1987)).  "[A] contract providing that the employment is for 'the season' is for a fixed period of time where the term 'season' has a definite and clear meaning in the particular business."  52 N.Y. Jur. 2d Employment Relations § 58 (citing Spahn v. Winter Garden, 132 N.Y.S. 446 (1st Dept. 1912)).  Here, the first letter states that Plaintiff will receive a certain amount per day of service "for the

remainder of the 2002-2003 school year." Defendants' Exhibit C. The second letter states that Plaintiff "[is] being retained on the active substitute list for the 2003-2004 school year" and adds that "[i]t is intended that [his] services will be performed in substantially the same manner next year as in this past year, and also on substantially the same terms and conditions of employment as in this past year." Defendants' Exhibit D. Finally, the third letter, identical in most respects to the second letter, states that Plaintiff "[is] being retained on the active substitute list for the 2004-2005 school year." Defendants' Exhibit E. I conclude, and respectfully recommend that Your Honor should conclude, that a jury could find that the term "school year" has a clear and definite meaning within the business of school administration, and therefore that the letters explicitly state a fixed term of employment. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that there are genuine issues of material fact with regard to whether Plaintiff was an "at-will" employee.

In addition to his arguments that he had a legitimate claim of entitlement under New York law and under the letters, Plaintiff argues that he was treated differently than a probationary teacher was treated after Mahoney was made aware of the probationary teacher's arrest. Plaintiff's Memorandum in Support at 14-15. Specifically, Plaintiff points out, and Defendants do not dispute, that Mahoney provided the probationary teacher with a chance to explain her arrest and did not terminate her after the arrest. Plaintiff's 56.1 Statement at ¶¶ 7-9; Defendants 56.1 Reply at ¶¶ 7-9.

I conclude, and respectfully recommend that Your Honor should conclude that if the jury finds that Plaintiff had an ongoing contractual relationship with Defendants, such a relationship, viewed against the background of New York's policy against employment discrimination based

on criminal history and the School District's own behavior with regard to the arrest of a probationary teacher, gives rise to a property interest sufficient to support a due process claim. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that the School District is not entitled to judgment as a matter of law with regard to Plaintiff's due process claim based on Plaintiff's property interest in his continuation on the substitute list as issues of fact remain as to Plaintiff's contractual relationship with the School District.

Likewise, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Mahoney is not entitled to summary judgment on Plaintiff's procedural due process claim based on qualified immunity. The doctrine of qualified immunity protects government officials from civil liability for actions taken while exercising discretionary functions if " 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Lewis v. Cowen, 165 F.3d 154, 166 (2d Cir. 1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This standard " 'generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken.' " Id. (quoting Anderson v. Creighton, 483 U.S. 625, 639 (1987)). A constitutional right is clearly established when " 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.' " Mollica v. Volker, 229 F.3d 366, 370-71 (2d Cir. 2000) (quoting Anderson v. Creighton, 482 U.S. 635, 640 (1987)).

Although, as Defendants point out, New York courts have consistently held that, absent a

contractual relationship, substitute teachers do not have a property interest in their employment because they are not tenured, see Longarzo v. Anker, 578 F.2d 469, 471 (2d Cir. 1978) ("In order to have a property interest in their employment, teachers must have tenure or 'de facto tenure.' Longarzo, as a probationary teacher, has no such right.") (citations omitted); Canty v. Bd. of Educ., 470 F.2d 1111, 1113 (2d Cir. 1972) ("The mere subjective expectancy of tenure did not entitle [plaintiff substitute teacher] to the full scale due process hearing to which a government employee is entitled when his [or her] employment falls within the Fourteenth Amendment's protection of liberty and property."); Roslyn Union Free Sch. Dist. v. State Div. of Human Rights, 72 A.D.2d 808, 809 (2d Dept. 1979) ( "A substitute teacher, unlike a regular teacher, has no vested right to her position.  A substitute is entitled to work as long as she is able to perform, and when she is unable to, she may be dismissed provided the decision to dismiss is not based on impermissible discriminatory motives."); Council v. Donovan, 40 Misc.2d 744, 748-49 (Sup. Ct. 1963) (plaintiff substitute teacher "acquired no tenure through his employment as a substitute teacher, but only the right to serve temporarily and for such days as the board of education made available to him for employment in that capacity" and therefore "the requirements of due process [did not] mandate a formal hearing."), the fact that employment contracts may give rise to a legitimate claim of entitlement to continued employment barring an employer from terminating the employee without notice and a hearing is clearly established law.  See Roth, 408 U.S. at 576-78; Perry v. Sindermann, 408 U.S. 593, 601 (1972); S&D Maint. Co., 844 F.2d at 965-967.  As issues of fact remain as to whether Plaintiff had an ongoing contractual relationship with Defendants that prohibited Defendants from terminating Plaintiff without notice and a hearing, I conclude, and respectfully recommend that Your Honor should conclude, that fact issues remain

as to whether Mahoney's actions were objectively reasonable at the time Mahoney directed that Plaintiff's name be removed from the substitute list. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant Mahoney's motion for summary judgment under Plaintiff's procedural due process claim should be denied.

## 2. *Plaintiff's First Amendment Retaliation Claim*

Plaintiff claims Defendants violated his First Amendment right to petition the government for redress when they terminated his employment in retaliation for *Rosendale 1*. In order to state a prima facie case of First Amendment retaliation, a plaintiff must show: "(1) his or her speech was constitutionally protected; (2) he or she suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination. Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004). The First Amendment right to petition the government for a redress of grievances, which "is an assurance of a particular freedom of expression," McDonald v. Smith, 472 U.S. 479, 482 (1985), is " 'generally subject to the same constitutional analysis' as the right to free speech." White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993) (quoting Wate v. U.S. , 470 U.S. 590, 610 n.11 (1985)). Thus, Plaintiff's claim that his right to petition was violated is governed by the standard outlined above.

Defendants argue that they are entitled to summary judgment on Plaintiff's First Amendment retaliation claim because Plaintiff has failed to show a genuine issue of material fact with regard to the elements of his prima facie case. Defendants' Memorandum in Support at Point III. Specifically, Defendants argue that Plaintiff cannot show either the first or the third prong of the prima facie case. Id. In other words, Defendants argue that Plaintiff cannot

establish that *Rosendale 1* involved a matter of public concern or that a causal connection between Mahoney's direction that Plaintiff be removed from the substitute list and Mahoney's awareness of *Rosendale 1* exists.  Id.

### a)  *Matter of Public Concern*

As a threshold matter, a public employee asserting a First Amendment retaliation claim must establish that his or her speech may be "fairly characterized as constituting speech on a matter of public concern."  Connick v. Myers, 461 U.S. 138, 146 (1983).  A court determines whether an employee's speech involves a matter of public concern by examining the "content, form and context of a particular statement."  Id.  When the alleged protected speech involves a prior lawsuit, complaint, or grievance, "the fundamental question is whether the employee is seeking to vindicate personal interests or to bring to light a 'matter of political, social, or other concern to the community.' "  Rao v. New York City Health & Hosps. Corp., 905 F. Supp. 1236, 1243 (S.D.N.Y. 1995) (quoting Connick, 461 U.S. at 146).  "Even as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further his [or her] own . . . interest, his [or her] First Amendment right to comment on that issue is entitled to little weight."  White Plains Towing, 991 F.2d at 1059.

In Konits v. Valley Stream Central High School District, 394 F.3d 121 (2d Cir. 2005), for example, the Second Circuit concluded that the plaintiff's lawsuit constituted constitutionally protected speech because the suit "was predicated on speech about gender discrimination against a fellow employee that directly implicated the access of the courts to truthful testimony."  Id. at 125-26.  Furthermore, in reaching this conclusion, the Second Circuit noted that the plaintiff's suit "had [the] broader public purpose of assisting [the other employee's] claims of gender discrimination" rather than "redress[ing] personal grievances."  Id. at 125.  In contrast, in

Saulpaugh v. Monroe Community Hospital, 4 F.3d 134 (2d Cir. 1993), the Second Circuit concluded that the plaintiff's lawsuit was not a matter of public concern because the suit was motivated by her "individual employment situation" and not by the desire to obtain "relief against pervasive or systemic misconduct."  Id. at 143 (citations omitted).  The Second Circuit also noted that the plaintiff's suit was not "part of an over all effort . . . to correct allegedly unlawful practices or bring them to public attention."  Id.

In their first motion to dismiss in this case, Defendants argued that Plaintiff's claim should be dismissed because the initial suit did not involve a matter of public concern.  In declining to dismiss the claim, Your Honor stated,

> The Court is unable on the present record to agree with the Magistrate Judge that the lawsuit against Amenia is not a matter of public concern.  To the extent Plaintiff seeks monetary damages for hearing loss he sustained due to failure on the part of the Town to control the noise levels of an adjacent rod and gun club, the claim is filed in furtherance of its own interest.  However, to the extent that the litigation raises issues concerning the failure of law enforcement to deal adequately with what may be a course of conduct violative of town land use regulations and injurious to the interests of other neighbors of the rod and gun club and other premises of the public generally, the litigation involves protected speech which raises issues of interest to the general public and is protected against First Amendment retaliation.

March 10, 2006, Memorandum and Order at page 5.

After reviewing the record in this case, I cannot conclude that there is any evidence from which a reasonable fact finder could conclude that Plaintiff was motivated to bring the lawsuit against the Town of Amenia by a desire to protect the interest of his neighbors, to obtain "relief against pervasive or systemic misconduct," or in an "over all effort . . . to correct allegedly unlawful practices or bring them to public attention."  Rather, after reviewing the Complaint in *Rosendale 1*, which is a matter of public record and of which I may take judicial notice, and Plaintiff's submissions in this case, I conclude, and respectfully recommend that Your Honor

should conclude, that Plaintiff, like the plaintiff in <u>Saulpaugh</u>, initiated *Rosendale 1* solely to redress personal grievances–his loss of hearing and property value that allegedly resulted from the defendants' failure to enforce his neighboring gun club's special use permit.  <u>See</u> <u>Rosendale v. LeJeune, et al.</u>, 03 Civ. 6181, Docket # 1; <u>see also</u> Plaintiff's Affidavit at ¶¶ 21-24.  Plaintiff has offered no evidence to the contrary.  In fact, Plaintiff states in his affidavit that because of the Defendants' failure to enforce the conditions of the permit, "the resulting noise has had a negative effect on my efforts to breed horses, on the value of my property and on my health."  Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that there is no sufficient evidence from which a jury could conclude that Plaintiff's lawsuit against the Town of Amenia is constitutionally protected speech, and therefore Defendants are entitled to summary judgment under Plaintiff's First Amendment retaliation claim.

### b)       *Causal Connection*

Even if Your Honor concludes that *Rosendale 1* was constitutionally protected speech, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff has not established a genuine issue of material fact with regard to the third prong of Plaintiff's prima facie case.  In order to establish a causal connection between the protected speech and the adverse employment action, the plaintiff must show that the speech was a "substantial motivating factor" of the adverse employment action.  <u>Washington v. County of Rockland</u>, 373 F.3d 310, 321 (2d Cir. 2004).  In other words, a plaintiff must show that, absent the employee's protected speech, the adverse employment action would not have been taken.  <u>Morris v. Lindau</u>, 196 F.3d 102, 110 (2d Cir. 1999).  This showing requires tangible proof; the plaintiff " 'may not rely on conclusory assertions of retaliatory motive.' "  <u>Washington</u>, 373 F.3d at 321 (quoting <u>Deters v. Lafuente</u>, 368 F.3d 185, 190 (2d Cir. 2004)).  However, "[c]ausation can be established either

indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." Morris, 196 F.3d at 110.  Although close temporal proximity between protected speech and adverse employment actions can be sufficient to support an inference of retaliatory motivation, neither the Second Circuit nor its district courts have "drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  Gorman-Bakos v. Cornell Coop. Extension, 252 F.3d 545, 554-55 n.5 (2d Cir. 2001) (pointing out that the Second Circuit has held eight months sufficient, while holding three months insufficient to support an inference of causation, and that one district court has held eleven months sufficient, while another has held five months insufficient).          I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff has failed to come forward with any indirect or direct "tangible proof" that his lawsuit against Amenia substantially motivated Mahoney's decision to direct the removal of Plaintiff's name from the substitute list.  It is undisputed that Plaintiff initiated his suit against Amenia on August 18, 2003.  Defendants have introduced evidence that Mahoney instructed Pulver to tell the BOCES Sub Calling Service to take Plaintiff's name off the list on August 30, 2004 (see Pulver Affidavit, Exhibit B), more than a year after Plaintiff initiated the lawsuit.  Defendants have also introduced evidence that after Plaintiff initiated the lawsuit, he received a letter dated June 9, 2004, advising him that he was being retained on the substitute list.  Defendants' Exhibit E.  Additionally, Defendants have offered evidence that Mahoney did not learn of Plaintiff's suit against Amenia until October 2004, when, as the parties have stipulated, the school nurse was served a subpoena in the matter. Mahoney Affidavit at ¶ 20.

Plaintiff has failed to rebut Defendants' evidence with evidence that Mahoney knew about *Rosendale 1* when he decided to terminate Plaintiff, nor has Plaintiff offered any evidence of direct retaliation. Indeed, rather than arguing that Mahoney knew of Plaintiff's lawsuit in August 2004, Plaintiff appears to argue that Mahoney did not actually make the decision to terminate Plaintiff in August 2004, but could have made the decision to terminate Plaintiff after the October 2004 subpoena. Plaintiff's 56.1 Reply at ¶ 26; Plaintiff's Memorandum in Opposition at pages 21-22. In support of his argument, Plaintiff only offers his recollection that he was called to teach twice during the fall of 2004. In response, Defendants have produced payroll records indicating that Plaintiff was not paid for teaching after July 2004. Pulver Affidavit, Exhibit B. I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's speculation is insufficient to raise a genuine issue of material fact as to when Mahoney made the decision to terminate Plaintiff.

Thus, in light of the evidence proffered by Defendants, which indicates that Mahoney made the decision to terminate Plaintiff on or about August 30, 2004, months prior to learning about *Rosendale 1*, and in light of Plaintiff's failure to offer any proof contradicting this evidence, I conclude, and respectfully recommend that Your Honor should conclude, that a reasonable jury could not find for Plaintiff on the third prong of his prima facie First Amendment retaliation claim. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim, and I find no need to address Mahoney's qualified immunity.

## C.    <u>Plaintiff's Cross-Motion for Partial Summary Judgment</u>

As noted <u>supra</u>, Plaintiff has filed a cross-motion for partial summary judgment on his procedural due process claim. Because I have concluded that there are genuine issues of

material fact with regard to whether Plaintiff had an ongoing contractual relationship with Defendants, I also conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff has not established, as a matter of law, that he is entitled to summary judgment on his procedural due process claim.  Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's cross-motion for partial summary judgment should be denied.

**III.**     **CONCLUSION**

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Defendants' motion for summary judgment should granted in part and denied in part, and that Plaintiff's cross-motion for partial summary judgment should be denied.

**IV.**     **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of thirteen (13) working days, <u>see</u> Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the

## IV. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of thirteen (13) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Charles L. Brieant at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Brieant.

Dated: _March 27_, 2008
White Plains, New York

Respectfully Submitted,

LISA MARGARET SMITH
UNITED STATES MAGISTRATE JUDGE

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Charles L. Brieant

28